Exhibit 1.

IRS Reporting

March 12, 2012

166 South Main Street
Barre, Vermont 05641

Mike Groff Bank Receiver
Melissa Alekna
Citizens Bank Services Senior Advocate
One Citizens Drive
Riverside, RI 02915
Via Email, Mail

Re: Section 6  Respa Request for Information
Loan Numbers 880-001-1061682-9001/,9002,9003,9004
48-54 West patterson Street Barre Vermont
160-166South  Main Street Barre Vermont
404 Washington Street Barre Vermont
52 Riverside Terrace Hardwick Vermont

This is qualified  written request under section 6 of the Real Estate  Settlement
Procedures  Act(respa)

Dear Mr Groff & Ms. Alekna:

    I am  writing to receive the following documents I have not been able to receive from
receiver Mike Groff or the Citizens Bank. I cant complete Vermont or Federal Tax
Documents.
    1) All receipts from June 2011-October 2011
    2) All rental tenant ledgers jan-oct  2011
    3) Copies of all checks 2011 june-oct
    4) Complete final disbursements and account balances.
    5) 1099 and 1098 information for myself and all vendors.
    6) Copies of all deposit tickets for 2011

I have made repeated requests to Mike Groff via email, yourself and attorney Betsy
Gwynn to no avail over the past  40 days.

Please  email to me and verify by phone 8022491982.

I understand that under section 6  of respa you are required to acknowledge my  request
within 20 business  days and must try to resolve the issue within  60 business days.

Sincerely,

Barrett Gregoire

**✻ Citizens Bank**

One Citizens Drive
Riverside, RI 02915

January 13, 2012

Mr. Barrett Gregoire
166 South Main Street
Barre, VT 05641-4810

RE:  CFPB Case Number 120104-000246

Dear Mr. Gregoire:

The Consumer Financial Protection Bureau ("CFPB") has forwarded your letter dated
January 5, 2012 to us for review and response.

I forwarded your concerns to our Global Restructuring Group (GRG) for review.  Our
records confirm that GRG made every effort to work with you through various
forbearances and amendments, however, it was ultimately determined that the Bank had
little option but to commence foreclosure action on the four commercial properties.  It is
our understanding that at all times relevant to your CFPB complaint you were represented
by legal counsel of your choosing.  In particular, you and your attorney, Lisa Chaldize,
consented to the appointment by the Vermont Superior Court of a receiver for the
properties, Michael Groff.

Furthermore, you are aware on May 4, 2011 the Vermont Superior Court entered an order
in a contempt proceeding requiring you to remain 100 feet away from the properties and
to refrain from having any contact with the tenants.  It is my understanding that you
agreed to the order and that your attorney accepted the form of the order.

Mr. Groff, the receiver, filed the required public reports with the Vermont Superior Court
that detailed receipts and expenditures.  At no time did you or your attorney object to
such reports nor were there any findings by the Vermont Superior Court of improper
conduct by the receiver or the Bank.  I note your reference to criminal activity by the
receiver and I presume any such concerns were referred to law enforcement at the time
by you or your attorney.

Ultimately, an agreement was reached between all of the parties whereby the loan
agreement was amended to provide you additional time to pay amounts then owing.  As
part of the agreement, the Bank agreed to suspend foreclosure on the four properties for
one year provided that you performed under the amended agreement and to terminate the
foreclosure actions at the end of the year if you continued to perform as agreed upon.



Consumer Financial
Protection Bureau

P.O. Box 4503
Iowa City, Iowa 52244

your choosing based on your own judgment and without influence by the Bank or others.  As part of the process, the receiverships were terminated by the Vermont Superior Court and the properties were returned to you for management.



Citizens Bank has at all times acted in accordance with applicable laws and the contractual agreement governing your accounts with regard to this matter and, we hereby deny your claim.  Notwithstanding this we are aware that your relationship has been in GRG for some time and if you are able to repay the loan early we may be prepared to offer a discount accordingly.  As you have been informed, J. Robert Cotton is now handling your relationship with the Bank and will contact you separately.  Should you have any other questions or concerns about your relationship with the Bank you may contact him or you should contact your attorney.

A Specialist in Consumer Response reviewed your complaint, including your indication that discrimination may have occurred, based on the consumer financial protection laws within the CFPB's authority.  It appears there is pending or prior litigation regarding the same issues raised by this matter, and therefore no further action will be taken on your individual complaint at this time.  We hope you understand that the CFPB does not represent individuals in legal matters.  Our disposition should not be considered to be a determination with respect to the validity of your complaint.

We take consumer complaints very seriously and are grateful for the information you have provided throughout this process. Consumer complaints inform us about business practices that may pose risk to consumers and assist the CFPB's supervisory, enforcement, and rulemaking responsibilities. Hearing from engaged and proactive consumers like you is critical to our mission. With this correspondence, we are closing your file on this matter within Consumer Response. Please feel free to contact the CFPB should you need help with another consumer finance matter in the future.

Thank you,
Consumer Response Team

Consumer Response
Consumer Financial Protection Bureau
consumerfinance.gov
(855) 411-CFPB (2372)

J. Robert Cotton
Global Restructuring Group 11th FL MS 1100
RBS Citizens N.A.
28 State St.
Boston, MA 02109
Office: 617-994-7361
Mobile: 617-913-9274
John.R.Cotton@Citizensbank.com

---

**From:** , [mailto:salesgregoirere@cs.com]
**Sent:** Tuesday, February 07, 2012 10:00 AM
**To:** Cotton, Bob R
**Subject:** Gregoire properties

Hi Mr. Cotton:

 I have still not received my copies of reports for Sept, and October not filed in the court, bank statements, and detailed receipts(5 months). I am very concerned after reviewing the detailed prior receipts( provided by attorney in December) there is more misappropriated money. The receiver and Vedanta Dumas Griffith are being investigated by two authorities.  There is a great  deal of more damaging evidence I am holding back to spare the bank embarrassment in this matter.

 The previous  Citizen Bank officers I dealt with were very professional and would have never tolerate the actions of these two individuals. I still can't imagine she was a workout officer and many other bank clients may have similar issues. I understand you want to settle this matter in amicable manner for the bank and us. The stress is this matter has been horrific. I am working on generating  some funding for settlement if feasible and the bank needs to reduce substantially the figure you proposed.

 Please update me on the documents and resolution. Thank you for your attention to this matter.

Barrett Gregoire

---

**Use of email is inherently insecure. Confidential information, including account information, and personally identifiable information, should not be transmitted via email, or email attachment. In no event shall Citizens or any of its affiliates accept any responsibility for the loss, use or misuse of any information including confidential information, which is sent to Citizens or its affiliates via email, or email attachment. Citizens does not guarantee the accuracy of any email or email attachment, that an email will be received by Citizens or that Citizens will respond to any email. This email message is confidential and/or privileged. It is to be used by the intended recipient only. Use of the information contained in this email by anyone other than the intended recipient is strictly prohibited. If you have received this message in error, please notify the sender immediately and promptly destroy any record of this email.**

**VIA FIRST CLASS MAIL**

February 12, 2019

Stephen T. Gannon
Chief Legal Officer
Citizens Financial Group, Inc.
One Citizens Plaza
Providence, RI 02903

      Re:    <u>Records Needed for Internal Revenue Service</u>

Dear Mr. Gannon,

      We represent Mr. Barrett Gregoire, who is a former customer of Citizens Bank, N.A ("Citizens"). We write on his behalf to obtain complete and accurate records necessary for filings that Mr. Gregoire intends to submit to the Internal Revenue Service (the "IRS") for several reasons, including tax purposes. The records concern Mr. Gregoire's properties that were subject to a foreclosure action initiated by Citizens due to non-payment of his properties' property taxes. As a result of the foreclosure action, Mr. Gregoire's properties were put under the stewardship of a court-appointed receiver, Michael Groff (the "Receiver"). The Receiver coordinated with a Citizens employee, Ms. Vedanta Dumas-Griffith, in managing the below properties, loans, and accounts. In the past, Mr. Gregoire has requested documentation relating to his properties from both the Receiver and Citizens to no avail. As a result, we issue this formal demand to produce documentation related to the properties, accounts, and loans listed below. Please direct any and all communications to Barr Law Group from this point forward.

      Specifically, Mr. Gregoire desires to obtain documentation relating to the following loans (the "Loan(s)") and checking accounts (the "Account(s)") for the associated properties (the "Property(ies)") listed below:

     (i)     404 Washington Street, Barre, VT 05641 – Loan No.: 880-106182-9001 and Checking Account Nos.: 400613-514-8 and 400302-307-1;

     (ii)    160-166 South Main Street, Barre, VT 05641 – Loan No.: 880-106182-9002 and Checking Account Nos.: 400613-512-1 and 400302-113-4;

     (iii)   48-54 West Patterson Street, Barre, VT 05641 – Loan No.: 880-106182-9003 and Checking Account Nos.: 400613-515-6 and 400613-515-8; and

     (iv)    52 Riverside Terrance, Hardwick, VT 05483 – Loan No.: 880-106182-9004 and Checking Account Nos.: 400302-310-1 and 400613-516-4.

Letter to Stephen T. Gannon
February 7, 2019
Page 2 of 2

For the Loans, Accounts, and Properties, Mr. Gregoire requests true, accurate, and complete copies of the following from April of 2010 through October of 2012:

(i)     All check deposit tickets (front and back);

(ii)    All deposited checks (front and back);

(iii)   All Form 1096s, 1098s and 1099s;

(iv)    Final disbursements and Account balances;

(v)     All receipts;

(vi)    List of Loan funds, inclusive of Property breakouts, documentation of the accounts to which loan funds were distributed, and the dates of distribution to such accounts;

(vii)   All rental tenant ledgers for the above-referenced Properties;

(viii)  All receipts and contracts related to capital improvements to Properties;

(ix)    All property tax disbursements for the Properties;

(x)     Certification that no claim was made and paid to Chicago Title Insurance Company relating the property located at 404 Washington Street, Barre, VT 05641;

(xi)    The relevant contact information for the Chicago Title Insurance Company;

(xii)   The purchase price of the Loans that Citizens sold to TBF Financial, Inc.;

(xiii)  Any and all accounts not listed above for which the Receiver and Ms. Dumas-Griffith had signatory power, including all monthly account statements for the period listed above.

Please produce the above-requested documents by **Friday, February 22, 2019 at 5:00 P.M.** If you should need to contact us about this demand, please do so within a reasonable time of its receipt. Mr. Gregoire respectfully reserves all legal and equitable rights related to this demand. Thank you for your anticipated cooperation.

Respectfully,


Russell D. Barr
RDB/ben


cc:     Barrett Gregoire (via electronic mail)



## ✕✕ Citizens Bank

Office of the Chairman
JCA150
One Citizens Bank Way
Johnston, RI 02919

March 8, 2019

Barr Law Group
C/O Russell D. Barr
125 Mountain Rd
Stowe, VT 05672

**RECEIVED**

MAR 13 2019

**Barr Law Group**

RE:  Barrett Gregoire

Dear Attorney Barr,

I am writing to respond to the correspondence our office received regarding your client Barrett Gregoire.  I understand you requested documentation pertaining to commercial loans and corresponding checking accounts needed for the Internal Revenue Service. Specifically, copies from April of 2010 through October of 2012.

Enclosed is a copy of our previous response letter to a complaint filed with the Consumer Financial Protection Bureau ("CFPB") dated January 13, 2012, which was sent to Mr. Gregoire regarding similar issues.

Please note the commercial loans were transferred effective November 20, 2012, to TBF Financial, LLC. Enclosed are copies of the transfer notices sent to the customer for reference. Should you have any questions regarding the loans, please contact TBF Financial, LLC directly.

Please understand the Bank is unable to provide you with the purchase price of the loans sold to TBF Financial, LLC.

In regards to your client's business checking accounts, the Bank requires that you provide a subpoena for the requested information.

I hope this letter has helped to remedy any concern you may have had regarding this matter, and I appreciate the time you have taken to bring this issue to our attention.

Should you have any further inquiries, please contact me directly at 401-464-7858 Monday through Friday from 9:00 AM until 4:30 PM Eastern Standard Time (EST).

Respectfully,

*Stacy Swett*

Stacy Swett
Office of the Chairman

Enclosures

OFFICE OF THE
**HAIRMAN**

Member FDIC

May 21, 2018

Po box 26,
Graniteville, Vt 05654

Citizens Bank
Montpelier VT 05601

Via fax 802-223-9538

Re: records needed for it's

Dear citizens

    I need the following bank account information and expedited. Records from April 2010 to October 31 2012

Complete list of all bank accounts with signatory power with Michael groff and or vedanta Dumas Griffith . From start to end date statements.

Front and back copies of all checks

All receipt copies in entirely deposit ticket details.

List of all loan funds with property breakouts and documentation of distribution with dates to which accounts.

1099, 1098 copies for 2010-2012

Copy of all capital improvement receipts and contracts for four rental properties.

Copy of any disbursements made for property taxes or water in 2010-2012 with building info.

Purchase price rbs citizens obtained for my loans sold to tbf financial.

Please call me at 2491982 to pickup. Thank you.

Sincerely,

Barrett Gregoire

W. Patterson receiver fees taken:

**June 2010**: $872.72 plus "expense" reimbursement of $851.28.

**July 2010**: $700 plus $1,404.10 travel reimbursement.

**August 2010**: $936.13 (noted fee and expense paid in full) plus attempted additional payment of $1,100 for September expenses.

**September 2010**: No fees indicated. Two travel reimbursement checks, one for $155 and another for $1,100 for September travel, check dated August 30, 2010.

**October 2010**: None specified. Various large on-line transfers, with return of the smallest one ($200) NSF, fee of $37.

**November 2010**: $1,500 included in Report of Receiver, but not reflected on bank statement.


W. Patterson deposits made:

**June 2010**: $3,885, and received an additional credit of $872.72 because **he bounced a check (to himself)** of that amount.

**July 2010**: $3,352 plus $22 "fee rebate".

**August 2010**: $2,215 plus return item of $1,100 (bounced check to Groff, triggering $37 NSF fee).

**September 2010**: $4,427.

**October 2010**: $4,904 plus $200 returned wire transfer triggering $37 NSF fee.

**November 2010**: $1,500 per Report of Receiver, but no such item on bank statement.

**December 2010**:

**

August 2, 2011

Jack J. Mikels, Esq.
Jack Mikels & Associates, LLP

I.    <u>West Patterson Street:</u> loan number 880-1061682-9003; docket no. 214-3-10 Wncv; original face amount $186,000; protective loan advance limit $24,536.08; account numbers 400613-515-6 from June 2010 through October 2010, ending balance $151.15 as of October 31, 2010. **THEN**: the account number changes to 400302-309-8, and the account name changes from

    A.    **Discrepancy between rents received and receiver fee taken: June-October 2010**. Unfortunately, the receiver did not report to the court for some six months on this property, so it is particularly difficult to follow the money. In his report dated October 22, 2010 (which lumps together several months without break-down), Mr. Groff through you reports a total fee to him of $3,018.18. There is a discrepancy between this figure and the cancelled checks to Mr. Groff provided with the recently-produced monthly checking statements. For this period of time, the West Patterson account bore the number 400613-515-6.

In June, 2010 Mr. Groff was entitled to five percent of the rents from this property, he says in his October Receiver's Report.

According to the June statement (Bates 668-670), Mr. Groff deposited a total of $3,885, and received an additional credit of $872.72 because **he bounced a check (to himself)** of that amount, triggering a $22 return fee. In addition to the bounced check, however, he wrote another check to himself for $872.72 which did not bounce, plus another check to himself in the amount of $851.28 purportedly for expenses related specifically to West Patterson. At 8%, it would appear that his 8% fee for that property for that month should have been $310, not $872.72. His monthly fee thereafter per property was $700, he says in the October report.

His fees for July – October total $1,636.13 per cancelled checks,[1] and $3,018.18 per receiver's report through October 20, 2010. Note the various unexplained online transfers that may or may not account for the discrepancy, which total $5,800 of which $200 was returned NSF.

The total deposits for this period are $14,356, as opposed to a total "rents collected" sum in the as-of October 20, 2010 Report of Receiver filed October 22, 2010 of $16,716.[2] The "supplemental" October report (dated February 23, 2011) identifies rents collected as $3,660. Unclear how this relates to the prior total six-month lump sum.

The supplemental October report, dated 2/23/10, identifies travel expenses in the amount of $814.74. Doesn't tally with any of the documents currently in my possession. It also identifies an "advance" for repairs of $5,463.86, though no protective advance is credited to this loan per the loan payment histories until November.

'**NOTE**: As of November 5, 2010 the W. Patterson account bears a new number, 400302-309-8, and starts with a balance of zero, which leaves unaccounted the $151.15 balance remaining in the old account as of October 31, 2010. The November 5 date corresponds to the loan payment history credit of $24,536.08 for the maximum advance per the "protective advance agreement" apparently signed by Barrett Gregoire on November 2, 2010. So, they must have opened a new checking account for West Patterson on that date. BUT !!!!!!!!!: The November account does not reflect a deposit of $24,536.08 for that month; only of $15,000 online transfer from account number 4003021206, which corresponds to the "general" receivership account of Groff that received $60k. (Plus a $100 deposit, probably required to open an account.) So, they were u̶n̶̶

---

[1] Undifferentiated breakdown in August of a $963.13 figure, cannot correlate receipts to the difference of $263.13.

[2] N.B.: The next Report of Receiver was filed in February, and purports to cover the month of October, 2010, reporting ostensible rents collected as supplement to the prior report, of $3,660. This report identifies a receiver fee of $1,500 paid as an October supplement, which would account for the $1,000 and the $500 online payment to Capital One, suggesting that the on-line payments to that entity are to an account owned by Mike Groff.

charging interest on undisbursed funds. ALSO: November 7, 2010 is the first check to a James
Bardin for "accounting", amount $687.30, see Bates 507 (?).

**NOTE**: 11/8/10 checking statement shows transfer from Groff's general receivership fund
(no. 4003021206) of $15,000, and on 11/15 an online transfer to 4003023101, which corresponds
with the account number for the 52 Riverside account.) HOWEVER: per the loan payment
histories, Barrett has been charged interest on the maximum "protective advance" amount
identified in the 11/2/10 agreement of the full maximum cap amount of $24,536.08.

**NOTE**: The ONLY credits to the "new" W. Patterson account are the $100 initial opening
credit, plus the $15,000 online transfer from the general receivership fund. Yet the Receiver's
Report for November identifies "rents collected" as being $3,472. Why weren't they deposited to
this account? And the November Receiver Report identifies several expenses that are not in the
bank statement, including a $687.30 check to James Bardin for "accounting".

Documents needed on West Patterson, in addition to bank statements and all documents relating to
the receivership prior to June 1, 2010:

      1.    **June 2010**. Receipts totalling $851.28 in support of expenses. Proof of rents
received to justify fee taken.

      2.    **July 2010**. Supporting documentation for 7/23 online payment to Captial One in
the amount of $650. Supporting documentation for $1,404.10 travel expense. Supporting
documentation for $700 "1/4 payment" to Mike Groff.

      3.    **August 2010**. Supporting documentation for $936.13 check to Mike Groff for "exp
& fee pd in full" and check to Mike Groff for $1,100 for "Exp sept" **which bounced**.

      4.    **September 2010**. Documents supporting check to Mike Groff dated 8-30-10 for
travel reimbursement in amount of $1,100 for September. Documents supporting check for $155
to Mr. Groff for reimbursement travel. Documents supporting two on-line payments to Capital
One, one in the amount of $2,200 and one in the amount of $500. Documents supporting payment
to Hardwick Electric Department of $49.99.

      5.    **October 2010**. Documents supporting an unspecified transfer of $2,400;
documents supporting three online wire transfers to Capital One in amount of $500, $1,000, and
$200 (last of which was returned NSF). [N.B.: Supplemental October Report of Receiver shows a
receiver fee for that month of $1,500. Would account for the $1,000 and $500 transfers, but not
the $200 or the $2,400.

      6.    **November 2010**. Documents supporting payment of receiver fee of $1,500 and
travel reimbursement of $1,015.66 and repairs advanced $650, $700, $506.20, and $60.
Documents supporting disbursement of $24,536.08 to Mr. Gregoire on 11/5/10.

repairs advanced $263.83; $50.72; $125. Also documents supporting rents received of $3,472 and
application of same. Also invoices and work product for "bookkeeping services" of S. Bardin
(Bates no. 510).

## Linda Gregoire

**From:** Barrett Gregoire <salesgregoirere@cs.com>
**Sent:** Tuesday, February 06, 2018 3:22 PM
**To:** Linda Gregoire
**Subject:** Fwd: Copy Request from OHND Website - 3:11cv1995
**Attachments:** pic14945.jpg

**RECEIVED**

FEB - 9 2018

U.S. District Court, NDOH
Clerk of Courts
Cleveland

Make sure give our address

Sent from AOL Mobile Mail

-----Original Message-----
From: OHNDdb_CopyRequest <OHNDdb_CopyRequest@uscmail.uscourts.gov>
To: salesgregoirere <salesgregoirere@cs.com>
Sent: Tue, Feb 6, 2018 02:53 PM
Subject: Re: Copy Request from OHND Website - 3:11cv1995

Mr. Gregoire,

The total for your copy request is $ 53.50

Please make check/money order payable to Clerk, US District Court.

Please include with payment a copy of this email, along with a
self-addressed stamped envelope, or cover letter with your return address.

Mail payment to:

United States District Court - Northern District of Ohio
Attention: Records - 3:11cv1995
801 West Superior Avenue - Suite 100
Cleveland, Ohio 44113

Once payment is processed your copies and receipt will be mailed. Thank
you.

(Embedded image moved to file: pic14945.jpg)


From: "Northern District of Ohio" <admin@ohnd-dev.jdc.ao.dcn>
To: OHNDdb_CopyRequest@ohnd.uscourts.gov,
Date: 02/06/2018 11:20 AM
Subject: Copy Request from OHND Website
Sent by: admin@ohnd-dev.jdc.ao.dcn

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

RBS CITIZENS, N.A., formerly known as    :
CITIZENS BANK, N.A., successor by merger to :
CHARTER ONE BANK, F.S.B.      :  Case No.:
              :
   Plaintiff,        :
              :
v.             :

I hereby certify that this instrument is **a true and correct copy of the original on file in my office.**
Attest: Sandy Opacich, Clerk
U.S. District Court
Northern District of Ohio

By:_____
Deputy Clerk

TOLEDO HOMES #2 LIMITED PARTNERSHIP, :
TOLEDO HOMES LIMITED PARTNERSHIP,  :
ORGANIZED NEIGHBORHOODS YIELDING  :
EXCELLENCE, INC. a/k/a ONYX, INC.,   :
TOLEDO LUCAS COUNTY HOUSING FUND, :
LUCAS COUNTY TREASURER,    :
LUCAS COUNTY AUDITOR,     :
              :
   Defendants.      :

### CONSENT STIPULATION AND ORDER APPOINTING RECEIVER

AND NOW, this ___7th___ day of ___October___, 2011 upon the consent of the undersigned

parties hereto, **ORDERED, ADJUDGED** and **DECREED** as follows:

**A.** **Findings of Fact and Conclusions of Law Relating to Appointment of Receiver**

1.  Toledo Homes #2 Limited Partnership and Toledo Homes Limited Partnership

(collectively, the "Borrowers") are indebted to Plaintiff on account of the loans (the "Loans")

which are secured by a first mortgage lien on the real property more particularly described in

Exhibit A (the "Mortgaged Property") and all revenues, rents and profits derived from such

Mortgaged Property as set forth in the complaint filed in the above captioned pleading (the

"Complaint").

2.  The Mortgaged Property consists of approximately 85 residential homes located

in Toledo, Lucas County, Ohio.

3.    Borrowers are in default of its obligation to pay the Loans in accordance with the terms of the Loan Documents executed in favor of Plaintiff as defined in and more fully described in the Complaint.   Capitalized terms not otherwise defined herein shall have the meanings set forth in the Complaint.

5.    Borrowers are insolvent and unable to meet its current obligations as they become due.

6.    Borrowers have inadequate working capital to provide for the tenant improvements, security or maintenance for the Mortgaged Property.

7.    As a result of the foregoing, the security and value of the Mortgaged Property is at risk of decline, deterioration, and dissolution.

8.    The appointment of a receiver for the Mortgaged Property is authorized under the terms of the Mortgages and is necessary to stabilize and preserve the Mortgaged Property and possibly liquidate the same in an orderly manner.

**B.    Appointment of Receiver**

1.    The request for appointment of a receiver is **GRANTED**.

2.    Michael Groff of Alpha Consulting, 725 Riverside Avenue, Whitefish, Montana 59937 is appointed receiver (the "Receiver") for the Mortgaged Property as described in the Mortgages for a period commencing on the date of this Order and to be continued thereafter pending further hearings and decision on the continuation or revocation of such appointment. The Receiver is experienced in property management.

3.    The appointment of the Receiver provided for herein shall be effective immediately and continue until revoked by further order of this Court. No individual or entity

2

may succeed or replace as the Receiver hereunder without the express written consent of Plaintiff and further ordered of this Court.

4. Within three (3) business days after the entry of this Order, Plaintiff shall serve a copy of this Order upon Defendants via overnight delivery and electronic mail.

5. The Receiver is appointed hereby for the benefit and protection of the rights and interests of Plaintiff and all actions of the Receiver pursuant to this Order shall be for the benefit and protection of the Plaintiff. The Receiver shall have the sole power to collect and receive all rents, profits, revenues, deposits of any kind, reimbursements of expenses, income, accounts receivable, general intangibles, rental value and any and all other sums (the "Revenues") arising in any manner from the Mortgaged Property.

6. Notwithstanding any of the provisions of this Order, nothing in this Order shall in any way limit, alter, or impair the rights and interests of Plaintiff in the Mortgaged Property, including the income, revenues and profits therefrom, or under the Loan Documents. In carrying out its duties hereunder, the Receiver shall provide management and operational services consistent with property management practices for properties of comparable type, class, age and condition. The Receiver shall not, without Plaintiff's prior written consent (a) make any single expenditure for the repair, maintenance, remodeling or other improvement to the Mortgaged Property exceeding $500.00, or (b) sell any parcel the Mortgaged Property.

7. The Receiver is authorized to conduct investigations of, and analyses concerning, the operation of the Mortgaged Property and to assume responsibility for all management and operational functions at the Mortgaged Property, including but not limited to, the making of disbursements as may be appropriate and in accordance with the Loan Documents of any monies generated from the Mortgaged Property, with authority to undertake repairs (subject in certain

3

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| RBS CITIZENS, N.A., et al. | ) | CASE NO. 11-cv-01995 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES G. CARR |
| | ) | |
| vs. | ) | I hereby certify that this instrument is a true and correct copy of the original on file in my office. |
| | ) | Attest: Sandy Opacich, Clerk |
| TOLEDO HOMES #2 LIMITED | ) | U.S. District Court |
| PARTNERSHIP, et al., | ) | Northern District of Ohio |
| | ) | |
| Defendants. | ) | By: _Stephanie Sue_ |
| | | Deputy Clerk |

## RECEIVER'S FINAL REPORT
## AND MOTION FOR DISCHARGE

NOW COMES Michael Groff of Alpha Consulting, 725 Riverside Avenue, Whitefish, Montana 59937, who is the duly appointed Receiver over the mortgaged property as more fully described in the Consent Stipulation and Order Appointing Receiver dated October 7, 2011 ("Order of Appointment") (the "Receiver"), and hereby submits his final report. The final report is made pursuant to this Court's Order terminating the Receivership dated December 6, 2011. As more fully described in the Receiver's Journal, which is attached hereto and incorporated herein by reference as Exhibit "A-1 through A-5," the Receiver was engaged by the Plaintiff in early August, 2011, and the Order appointing the Receiver was entered on October 7, 2011 pursuant to stipulation of the parties. As outlined in the narrative description, the Receiver took possession and control of the property subject to the Order. He arranged for

-1-

Based on the foregoing, the Receiver is no longer in control of any assets of the Receivership estate, and he has accounted fully for all sums collected and disbursed by him. The Receiver hereby moves the court to discharge him of any further duties in this matter.

Respectfully submitted,

Jon A. Oldham (0075399)
Colin G. Skinner (0065170)
OLDHAM KRAMER
195 South Main Street
Akron, Ohio 44308-1314
(330) 762-7377; (330) 762-7390 fax
jon@oldhamkramer.com
cskinner@oldhamkramer.com
*Counsel for Receiver Michael Groff*

Motion granted.
So Ordered.

s/ James G. Carr
United States District Judge

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the  20  day of January, 2012, a true and correct copy of the foregoing Receiver's Final Report and Motion for Discharge was filed electronically with the Clerk of this Court. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

/s/

Jon A. Oldham (0075399)
Colin G. Skinner (0065170)
*Attorney for Receiver*

-3-

maintenance, paid utilities, and collected rents as more fully described in Exhibit "A." The Receiver performed in this capacity to the best of his abilities until October 28, 2011, when he discovered that the Receiver's checking accounts had been placed on a hold by Plaintiff RBS Citizens while that institution resolved some internal investigation. The accounts remained on hold until October 31, 2011, wherein an individual at RBS Citizens agreed to assist in processing certain payments, although the accounts remained on hold and beyond the Receiver's control. On November 4, 2011, the Receiver's bank accounts were released from the hold placed on them by RBS Citizens, and Receiver resumed his normal duties until informed of the Order terminating receivership on December 6, 2011. On December 13, 2011, RBS Citizens again denied the Receiver access to or control over the accounts, and he has had no access to any funds since that time.

Attached hereto and incorporated herein by reference as Exhibit "B" is a detailed report enumerating all payments made from the Receivership accounts from the appointment of the Receiver on October 7, 2011 until December 12, 2011, the last day on which the Receiver had control over those accounts. Attached hereto and incorporated herein by reference as Exhibit "C" is a Profit and Loss Statement reflecting every deposit made by the Receiver in the foregoing accounts for the rents collected and also reflecting the expenses arranged by category of expense incurred by the Receivership during the Receiver's tenure.

The debtor, and thus the Plaintiff, are in possession of detailed rent rolls and expense ledgers, which were kept by the debtor's employees, under the supervision of the Receiver, during the Receiver's entire tenure.

-2-

Based on the foregoing, the Receiver is no longer in control of any assets of the Receivership estate, and he has accounted fully for all sums collected and disbursed by him. The Receiver hereby moves the court to discharge him of any further duties in this matter.

Respectfully submitted,

Jon A. Oldham (0075399)
Colin G. Skinner (0065170)
OLDHAM KRAMER
195 South Main Street
Akron, Ohio 44308-1314
(330) 762-7377; (330) 762-7390 fax
jon@oldhamkramer.com
cskinner@oldhamkramer.com
*Counsel for Receiver Michael Groff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the __20__ day of January, 2012, a true and correct copy of the foregoing Receiver's Final Report and Motion for Discharge was filed electronically with the Clerk of this Court. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

/s/

Jon A. Oldham (0075399)
Colin G. Skinner (0065170)
*Attorney for Receiver*

-3-

*August 1-12, 2011* – Multiple discussions with Vedanta Dumas-Griffith over condition and scope of need for Receiver in Toledo OH. Meeting set with bank and counsel to discuss status of Toledo Homes, reporting, and possible modification. Contract for Services executed and returned by Vedanta Dumas-Griffith.

*August 15-20, 2011* - Arrived in Toledo for inspection and meeting. participated in meeting with the Board of Directors of Toledo Homes, Yvonne Samuels, Vedanta Dumas-Griffith, and also Citizens Bank counsel. We discussed the receiver order, as well as answered questions from the board. Physical inspection made of collateral property with Clyde Phillips. Purpose of viewing properties for visual inspection and their general condition to assess course of action. Due to neighborhood and tensions with tenants, accompany by Clyde Phillips was necessary. Made interior inspections where we were permitted entry for report of condition.

Reservations by banks representative regarding trustworthiness and willingness to continue with 'business as usual' discussed. Removal of Jimmie Gaines identified by Vedanta Dumas-Griffith as determination of his actions resulted in siphoning rents from Toledo Homes to operating account of ONYX for previous 2 years. Jimmie Gaines was uncooperative and unwilling to accommodate numerous requests for reporting or information without being paid to provide the same. Accounts established with deposits for Protective Advance funds form the bank for purposes of continuing daily operation and repairs. Mukltiple phone calls and discussions with Vedanta Dumas-Griffith

*August 22-26, 2011* - Toledo Homes signed the receiver order. Instruction of deposit of rents made to Yvonne Samuels. Payroll established through Paychex with addition of myself as Ohio law requires that a property manager is required to be an employee until appointment by court. Outstanding payroll liabilities were paid despite protest by banks representative. While outstanding expenses are not required to be paid, given the climate of tenant relations and hostile neighborhood, it would be impossible to operate in the community without the support of the existing maintenance team. Multiple phone calls and email exchanges with Vedanta Dumas-Griffith

*August 31, 2011* – receipt of maintenance and repair list from Yvonne Samuels, including the breakdown of the 9 houses in need of repairs and materials. I contacted Home Depot to pay for materials, via phone, with debit card. I received a second email with a lawn cutting quote from Allen's Lawn Care.

*September 1-9, 2011* – contact with attorney Benjamin Randall to discuss the possibility of using his services for the eviction matters that were underway at appointment by the bank. Determined there was a conflict of interest and referred him to the bank and banks counsel, Maureen Bass for further discussions. Informed by banks counsel that Benjamin Randall would no longer be representing Toledo Homes.

Discussions with Vedanta Dumas-Griffith regarding her review and assessment of Onyx and conversations with Willieann Moore. Determination by the bank that willingness to enter into a modification with the addition of ONYX as a co-borrower would be considered for approval subject to liquidation of vacant homes requiring extensive work to meet code. Discussion with Williann resulted in her support of a modification to allow the home ownership program to work for the community. Multiple phone calls and email exchanges with Vedanta Dumas-Griffith

*September 5, 2011* - Arrived in Toledo and met with Yvonne Samuels. We went over their book-keeping methods, rent collecting, accounts payable, payroll, and general

A

operations. I then, met with Clyde Phillips to discuss repairs needed, past, present and future in order to establish a budget going forward. We began discussing a general outline of getting some of the economically feasible vacant homes back on line. Determination made that several homes were viable as rentals with some improvements. This would be beneficial to ensure the safety and condition to prevent vandalism or further deterioration from vacancy. Multiple phone calls and email exchanges with Vedanta Dumas-Griffith

**September 11, 2011** - Received the maintenance update from Yvonne Samuels, as well as the updated water bills and bills payable.

**September 13, 2011** - I received and email from Vedanta Dumas-Griffith regarding Benjamin Randall, asking me to find another attorney without conflicting issues. This was response to Williann Moores request to continue using Randall as he continues to provide legal counsel to ONYX and has done so for years. Williann was informed that alternate counsel would be required.

**September 14, 2011** - I sent in payroll paperwork for Toledo Homes employees. I received an email from Yvonne Samuels, regarding 3 day notices and evictions. I received another email from Yvonne Samuels, concerning the water being shut off at 1265 Blum St. There are major issues with communications between the Dept. of Public Utilities and Toledo Homes, apparently there are many ongoing issues. Numerous discussions with the status of past due water and sewer bills with Vedanta Dumas-Griffith. Municipal utility with tenants leaving large outstanding balances. Contacted municipality, refusal to discuss adding a cap on outstanding balances, or allowing a listing of amounts that are due by each tenant, citing privacy laws. Further course of action needed. FOLLOW UP

**September 19, 2011** - Yvonne Samuels has more water bills to be paid. Also, there are invoices for storage for maintenance supplies and two court hearings coming up. No attorney has been identified, appearance and filing can be done for non-payment of rent by Yvonne Samuels until such time that counsel can be located. Further request made. Numerous conversations with Vedanta Dumas-Griffith regarding improvements. The bank is not interested in spending any protective advance funds on most of the units "off-line" despite a waiting list for occupancy. Determination made by site visit.

**September 21, 2011** - Sent Yvonne Samuels the new account numbers for the deposits for rents. I received an email from Allen's Lawn Care, regarding past due bills. I informed them that those were Onyx's responsibility and no payment by Toledo Homes was to be expected

**September 28, 2011** - I received an email from Yvonne Samuels stating that the Sprint bill is due, for company cell phones. Also that a house was broken into that needed repairs. She also stated that a house that is ready to move people in is in need of cleaning. I received an email regarding the phone bill, and vendors pre-receivership outstanding balances were told that they would be paid by Onyx.

**September 30, 2011** - I received an email from Yvonne Samuels, stating that Clyde Phillips needs assistance with moving some appliances. Yvonne stated that she is handling the evictions without an attorney, however, that she will need court funds for filing. Michelle will have to add cleanups to payroll. I forwarded rents deposited in August and September. (August $12,385.00 T.H.I $5,482.00 T.H.II) (September $10,014 T.H.I $3,332.00 T.H.II). I received the supply request from Home Depot.

Λ – ?

*October 3-7, 2011* - I submitted finalized paperwork for employees payroll. All expenses paid to employees will be done through payroll. Numerous conversations with Vedanta Dumas-Griffith regarding need for improvements to begin liquidation of units identified as too costly to bring back online. Court executed Receiver Order. Sent copies to parties.

*October 12, 2011* – Numerous payables made. Sprint bill, Ohio Dept of taxation, city fines for not cutting the grass in the vacant homes over the summer, Home Depot, MFB Hamilton Properties (storage), and property taxes. Clyde Phillips is behind in repairs and complaining that he is in need of help. Numerous discussions and emails with Vedanta Dumas-Griffith regarding liquidation plans

*October 18, 2011* - I received a letter from a gentleman making an offer on 639 Tecumseh. I forwarded this to Citizens Bank for review. Given the condition and outstanding real estate taxes, best option.

*October 22, 2011* - Received a bill for Nationwide Insurance for properties. I was advised that Citizens Bank has forced place policy on property and was advised not to pay with receiver funds. Vedanta Dumas-Griffith has gone out on disability due to illness.

*October 24-27, 2011* - Arrived in Toledo for my monthly visit. Reviewed rents, bills, evictions, and issues as well as getting the office supplies needed. I assisted Clyde Phillips in moving out the trash on two of the vacated homes, then delivered and installed appliances. Met again with William Moore to discuss home/ownership exit plan.

*October 28, 2011* - I logged onto online banking to pay the water bill that had been shut off, without notice. I was informed that the Citizens Bank had put a hold on all the receiver accounts, without notice. I am waiting to hear an explanation as to why this was done. I contacted June Artisty, informing her of the situation. She has let me know that she will forward this information on to Michael Gray. I contacted Yvonne Samuels to inform her that I have no access to the funds, and that all issues are on hold until Citizens Bank gets back to me. Numerous checks written for expenses were returned. Contact to Vedanta Dumas-Griffith revealed that she is unable to provide assistance in this matter and all communication should be directed to the bank.

*October 30, 2011* - I contacted Maureen Bass and Chris Shuller to discuss the hold on funds. They notified me that they will look into this.

*October 31, 2011* - I forwarded bills due to Citizens Bank as requested by Mike Gray for his discretionary control. Made contact for legal representation for receiver and address the holding of funds that are still on the accounts.

*November 1, 2011* - I asked Yvonne Samuels not to deposit rents into the accounts until we get this issue worked out on the holding of funds. Yvonne informed me that 624 sewer was backed up into the house. I informed Clyde Phillips to snake it out until the funds are released. I forwarded Michael Gray the receiver orders for his review since there had not been a replacement for Vedanta Dumas-Griffith, and the files had not been reviewed. Jon Oldham informed me that he is sending over the engagement letter tomorrow.

*November 2, 2011* - I forwarded employees and payroll totals to Citizens Bank. I received an email from my counsel, Colin Skinner, that he has contacted Citizens Bank and has had no response yet. Once again, I contacted Citizens Bank informing them of the urgency of releasing the receiver funds.

*November 3, 2011* - I forwarded the receiver order to my attorney, Colin Skinner for review. I was notified that Citizens Bank and Colin Skinner will be having a discussion

A - 3

regarding checks written to Citizens Bank from the receiver accounts. These checks were for travel reimburseme for Vedanta Dumas-Griffith to collateral properties on different occasions. Bob Cotton, Colin Skinner and Citizens Bank counsel were in discussion at 4:30 via conference call. Request by Citizens Bank to cease all action for 'awhile' to allow them to look further into the matter was made. No explanation or elaboration was made.

*November 4, 2011* - Receiver bank accounts were released from hold. A meeting was scheduled with myself, Colin Skinner, Bob Cotton and Brett Bacon for November 10th. We are to discuss the checks in question, Toledo Homes receivership and the status of Toledo Homes.

*November 7, 2011* - I was notified that the check written to ABC Warehouse for the appliances was returned due to the holds on funds. I spoke with the manager about getting them cash. Criminal charges were threatened due to the returned check resulting from the improper hold on funds.

*November 10, 2011* - Meeting with Citizens Bank and counsel.

*November 14, 2011* Discussion with my attorney Colin Skinner on how to proceed with the receivership. Despite banks request to cease further action, the duties and responsibilities are held to a higher standard by the court.

*November 15, 2011* - Emailed Ellen/Paychex to proceed with payroll, the holding of funds has been lifted.

*November 22, 2011* - Yvonne Samuels informed me that the ABC Warehouse, returned check, has been paid with the funds that I mailed her. We also discussed how to proceed payment for dump fees. I paid Home Depot and water bills. I informed Yvonne that I would handle the dump fees on my next visit, scheduled for November 29th.

*November 28, 2011* - Emailed Bob Cotton Novembers invoice.

*November 29 - December 1, 2011* I arrived in Toledo and met with Yvonne Samuels to review monthly updates and bills. We discussed the bid process for the houses to be put back online.'

*December 1, 2011* - I received a notice from Citizens Bank that they were terminating (engagement letter) with RBS. Also, that they were filing motion to terminate receivership. Contact to Yvonne Samuels to inform her to destroy the 4 checks left in her custody for payment to vendors for repair. These checks were required as the improper holds resulting in returned checks negated the ability to make payment via check.

*December 5, 2011* - Informed attorney Colin Skinner of the letter. He advised me that he would contact Citizens Bank and get back to me. Informed Yvonne Samuels that all monies were no longer in my control, and reminded her of my instruction destroy any and all checks in her posession for the vendors. I asked Yvonne for information she had on hand, to include in the report to Citizens Bank.

*December 6-13, 2011* - I have had ongoing communication with my attorney Colin Skinner. I sent $3,300.00 to Oldham Kramer for legal fees. Discovery of check left with Yvonne Samuels for payment to repairs was in fact, written to herself and cashed. Attempted contact to inquire as to the reason for the check cashing, she informed me that numerous emergent repairs were necessary over the weekend, and that receipts would not be an issue. The following day, another check, written to her daughter and cashed was discovered. All communication with anyone at Toledo Homes went unanswered. STOP

**CONSENTED TO BY:**

**TOLEDO HOMES #2 LIMITED PARTNERSHIP and
TOLEDO HOMES LIMITED PARTNERSHIP**

/s/ *William Moore*

By: *WilliANN   Moore*
Title: *President, Board of Directors*

**BUCHANAN INGERSOLL & ROONEY PC**

/s/ Christopher P. Schueller
Christopher P. Schueller, (PA Id. No. 92746)
Timothy P. Palmer (P.A. Id. No. 86165)
One Oxford Centre
301 Grant Street, 20th Floor
Pittsburgh, PA 15219-1410
Tel:  (412) 562-8800
Fax:  (412) 562-1041
Email:  christopher.schueller@bipc.com
         timothy.palmer@bipc.com
*Attorneys for Plaintiff*

# Capstone Check Diversion

Two (2) checks totaling $5,000 were written out of the 160 South Main Street
(Acct # 400613-512-1) plus $2,500 from the 404 Washington Street
(Acct #400613-514-8)  to an unknown entity called "Capstone Solutions"
when questioned on these checks the officer Vedanta Dumas-Griffith stated they were to
a licensed insured contractor.  There is no documented work to justify this expense in
maintenance.  Why is Massachusetts contractor used?  Ironically at 526 Maple Street,
Hinsdale, MA a business entity listed as "Capstone Fibers" is on Manta Business listing
as a Sewing Company.

Vedanta Dumas-Griffith lived at 526 Maple Street, Hinsdale, MA.  She never paid Robert
Tolvo any payments and she was foreclosed.  The house later was sold to a fugitive
Robert Gordon Kurtz.  He was arrested and the house has been vacant for years.  This
was verified by the Hinsdale, Police, twice.

A phone number to Susan Whalen existed later was disconnected.  There is a strong
possibility of money laundering or relatives of the loan officer (Vedanta) being paid for
non-existent, unauthorized work.